# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**SCOTT A. BIDGOOD,**

    **Plaintiff,**

vs.                                                                                    No. Civ. 99-0645 JP/RLP

**KENNETH S. APFEL,**
**Commissioner of Social Security,**

    **Defendant.**

## MAGISTRATE JUDGE'S ANALYSIS AND RECOMMENDED DISPOSITION[1]

1.     This matter comes before the Court on the Motion of Scott A. Bidgood ("Plaintiff") to Reverse the decision of the Commissioner of Social Security denying his applications for Disability Income Benefits ("DIB" herein). At issue is Plaintiff's entitlement to DIB benefits for a closed period, from October 13, 1996 until January 1, 1999.

2.     For the reasons stated below, I recommend that Plaintiff's Motion be granted in part, and that this matter be Remanded to the Commissioner for additional proceedings consistent with the Analysis and Recommended Disposition.

## I. Standard of Review

3     I review the agency's decision to determine whether the factual findings are supported by substantial evidence and whether correct legal standards were applied. See Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir.1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401,

---

[1] Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. §636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections within the ten (10) day period if that party seeks appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quotation omitted). I may "neither reweigh the evidence nor substitute (my) judgment for that of the agency." Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir.1991).

## II. Administrative History

4. Plaintiff applied for DIB benefits on March 28, 1997, alleging a date of onset of disability of October 13, 1996. His claims were denied initially and on reconsideration. Plaintiff appeared at a hearing before an administrative law judge (ALJ) August 13, 1998. In a decision dated September 18, 1998, the ALJ found that despite his severe impairments of chronic back pain due to status post spinal fusion, insulin dependent diabetes mellitus and hepatitis C, Plaintiff retained the residual functional capacity for the full range of light work. Applying the Medical-Vocational guidelines, the ALJ determined that Plaintiff was not disabled. The Appeals Council declined to review Plaintiff's claim on May 27, 1999.

## III. Relevant Facts

### A. Vocational facts

5. Plaintiff was born on November 23, 1955. (Tr. 63). He graduated from high school and has vocational training as a truck driver. (Tr. 29). He past relevant employment has been as a driver (Tr. 29, 103-113, 149).

### B. Medical care and treatment

6. Plaintiff had a several year history of intermittent back pain when he injured his back October 13, 1996. (Tr. 247, 162). X-ray evaluation demonstrated spinal abnormalities including an additional

2

lumbar vertebra, Grade I spondylolisthesis[2] at L5-L6 and degenerative arthritic changes at the L5-L6 level. (Tr. 248). Subsequent MRI indicated severe bilateral spinal stenosis at L5-S1. (Tr. 216). He was diagnosed with chronic lumbosacral sprain and symptomatic L5-L6 spondylolisthesis, and treated conservatively for three months by an orthopedic surgeon, Peter Salzman, M.D. (Tr. 241-247). During this period of conservative treatment, Plaintiff complained of increased back pain caused by exertion and by sitting for short periods. (Tr. 241-242, 244-245).

7.   Dr. Salzman operated on Plaintiff's back on December 18, 1996.[3]  Plaintiff did well postoperatively. He felt better, denied back and leg pain, and was able to walk without difficulty. (Tr. 237-239) Limitations were, however, placed on his activities. Throughout January 1997, Dr. Salzman indicated that he should not sit, lift or bend/twist his back. (Tr. 238-239). On March 31, 1997, Dr. Salzman stated that Plaintiff should avoid sitting for more than 30 minutes, and should continue to refrain from any lifting, bending or twisting. (Tr. 237). On June 2, 1997, Plaintiff complained of occasional back pain and stiffness, but continued to walk and exercise regularly without difficulty. (Tr. 236). Physical examination on that day showed no tenderness along his lumbosacral spine, no muscle spasm, normal heel and toe walking, equal and symmetrical deep tendon reflexes, and no decreased sensation in his lower extremities. Dr. Salzman revised the functional limitations he had placed on Plaintiff, stating that he should avoid sitting for more than 30 minutes at one time, should not lift more than 20 pounds, and should do no excessive bending or twisting of his low back. (Tr. 236).

---

[2] Spondylolisthesis is defined as abnormal forward movement of "one of the lower lumbar vertebrae on the vertebra below it, or upon the sacrum." STEDMAN'S MEDICAL DICTIONARY, 1656 (26th ed.1995).

[3] Lumbar decompression and total L5 laminectomy and posterolateral spine fusion from L5 to sacrum with right posterior iliac crest bone graft and epidural steroid block. (Tr. 216).

8.	On August 25, 1997, Plaintiff told Dr. Salzman that the continued to have back pain and stiffness, but denied radiation of pain to his legs. He stated that he exercised on a regular basis, and that his pain increased with increased activity. (Tr. 235). He was still able to walk well, and was encouraged to continue strengthening exercises. Dr. Salzman apparently saw Plaintiff for the last time on November 3, 1997. (Tr. 274). Plaintiff again complained of back pain and stiffness, but denied radiation of pain to his legs. He was able to walk well without difficulty and was told to continue walking as tolerated and to perform strengthening exercises. Ten days later, on November 13, Dr. Salzman filled out a physicians questionnaire, summarizing his care, diagnosis, treatment and recommendations (Tr. 270-273). He indicated that based on his office evaluations and examinations, Plaintiff was limited to 1 hour of sitting, one hour of standing and one hour of walking a day, and that he could only occasionally lift up to 10 pounds. (Tr. 272). Dr. Salzman did not explain why the limitations expressed in November 1997 differed from those expressed in June 1997.

9.	The final evaluation of Plaintiff's back in the record was performed by Paul Legant, M.D., on May 7, 1998. (Tr. 300-301). Plaintiff told Dr. Legant that he back pain had increased over the prior six months (e.g., since November 1997), that he was somewhat better when he walked, and that getting up and down from a seated position caused the most pain. He denied weakness or numbness of his legs. Plaintiff's physical examination was normal, except for low back pain during straight leg raising and tenderness over the facet joint of the lower lumbar region. X-ray evaluation indicated possible non-union of the fusion at L4-5. Dr. Legant diagnosed mechanical low back pain possibly due to the suspected non-union, and recommended six months of conservative care prior to re-evaluation. He did not comment on Plaintiff's functional abilities, other than recommending that he get back to some type of activity, volunteer work or gainful employment "as able." (Tr. 301).

4

10.     In addition to his back condition, Plaintiff also suffers from insulin dependent diabetes and hepatitis C. (Tr. 253, 227, 251, 276-281, 283, 296, 284-285, 293). Other than diet and medication, no physician has placed limitations on his activities as a result of these conditions. (Id.). Plaintiff was advised, however, that damage to his liver caused by hepatitis C may eventually necessitate a liver transplant. (Tr.285).

### C.  Plaintiff's Testimony

11.     Plaintiff's testimony related primarily to his functional limitations caused by pain and fatigue. He stated that he could not return to his prior occupation as a truck driver because back pain prevented him from sitting in one position for more than one hour. (Tr. 30). He stated that in the home setting, he could sit for ½ - 1 hour at a time, leaning forward to take the pressure off of his back. (Tr. 34). After that, he stands or walks for up to 1 hour. (Tr. 35-36). After being "up" for a maximum of 2 hours, he lies down with his feet elevated for 2 hours. (Tr. 38). He attributed the need to lie down to fatigue caused by diabetes, hepatitis C and the sedative effects of muscle relaxant medication. (Tr. 40-41).

### IV.  Issues Raised

### The ALJ Did Not Err in Denying
### Plaintiff's Claim at Step Three of the Sequential Evaluation Process.

12.     Plaintiff contends that the ALJ erred at step three of the sequential evaluation process by failing to indicate the listings he considered, failing to explain his adverse decision, and because the medical record establishes disability under Listing Section 1.05(C). Although the ALJ's step three analysis could have been clearer, the decision contains sufficient findings and an adequate discussion of the evidence to permit me to review the conclusion that Plaintiff's condition did not meet or equal Listing Sec. 1.05(C).

13. Listed impairments are those "considered severe enough to prevent a person from doing any gainful activity." 20 C.F.R. Sec. 404.1525(a). Specific medical findings are required in order to establish the existence of a listed impairment. 20 C.F.R. Sec. 404.1525 (c). A claimant's description of his or her impairments does not establish a disability under the Listing. 20 C.F.R. Sec. 404.1525(a). The Plaintiff bears the burden of presenting medical evidence sufficient to establish that he or she is disabled at step three. Musgrave v. Sullivan, 966 F.2d 1371, 1376 (10th Cir. 1992). If an individual's medical condition meets or equals a listed impairment, that individual is considered disabled *per se*. However, a claimant must demonstrate all the criteria of a listing in order to qualify as disabled at step three. Sullivan v. Zebley, 493 U.S. 521, 530, 110 S. Ct. 885, 891 (1990).

14. A finding of disability under Listing Section 1.05(C) requires the following:

*Disorders of the spine*

Other vertebrogenic disorders (e.g., herniated nucleus pulposis, spinal stenosis) with the following persisting for at least three month despite prescribed therapy and expected to last 12 months. With both 1 and 2:

1. Pain, muscle spasm, and significant limitation of motion in the spine, and

2. Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss.

15. The ALJ recognized that Plaintiff had a disorder of the spine, symptomatic spondylolisthesis, (Tr. 18). He denied Plaintiff's claim at step three, finding:

The claimant has no impairment which meets the criteria of any of the listed impairments described in Appendix 1 of the Regulations (20 C.F.R., Part 404, Subpart P, Appendix 1). No treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment. (Tr. 18).

16. The ALJ discussed the medical evidence relating to this finding, stating that following spinal surgery, Plaintiff progressed well, continued to wear a back brace, and was prescribed medication for

6

muscle spasms. He concluded by stating that as of November 3, 1997, the record indicated that Plaintiff could walk well, was able to heel and toe walk without difficulty, continued to allege pain and stiffness, but denied pain radiating into his legs. (Tr. 19). This recitation is a brief but correct summary the record. (Tr. 235-239, 274). A review of the findings from each examination conducted by an orthopedic surgeon clearly establishes that the criteria of Listing Section 1.05(C) were not met. (*Criteria for and Analysis of Medical Evidence of Disability under Listing Section 1.05(C)*, attached.).

17. In Clifton v. Chater, 79 F.3d 1007, 1009-1010 (10th Cir. 1996), the Tenth Circuit stated:

> The record must demonstrate that the ALJ considered all the evidence, but an ALJ is not required to discuss every piece of evidence. (citation omitted) Rather, in addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."

18. Based on the foregoing, I find substantial evidence that the Plaintiff did not meet the criterial for Listing Section 1.05(C), and further, that the rationale for so finding was adequately addressed by the ALJ.

### The ALJ Erred in His Determination of Plaintiff's RFC.

19. The ALJ found that Plaintiff retained the residual functional capacity (RFC) for the full range of light work, and that he had no significant non-exertional limitations which narrowed that range of work. (Tr. 20). Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds, and further requires a good deal of walking or standing, or pushing and pulling when sitting is involved. 20 C.F.R. §404.1567(b);West's Social Security Reporting Service, 1983-1991, S.S.R. 83-10, at 31.

20. Although the ALJ stated that he considered Plaintiff's subjective complaints, factors relevant

to those complaints, credibility (citing to S.S.R. 96-7p), medical signs and laboratory findings, medical history, and statements of treating and examining doctors in ascertaining Plaintiff's RFC (Tr. 19-20), I find that he failed to apply correct legal principles in ascertaining Plaintiff's RFC.

**Treating Physician's Opinions**

21. In terms of establishing exertional ability, the ALJ relied on 20 pound lifting limitation stated in Dr. Salzman's note of June 2, 1997. (Tr. 19-20, 236). The ALJ did not mention Dr. Salzman's November 1997 lifting restriction, limiting Plaintiff to occasionally lifting up to 10 pounds, and further restricting him to no more than one hour of standing, walking or sitting in an eight hour day. (Tr. 272). Dr. Salzman is a treating physician. His opinion must be given substantial weight unless good cause is shown to disregard it. Goatcher v. Dep't of Health & Hum. Serv., 52 F.2d 288, 289 (10th Cir. 1995) (citing Frey v. Bowen, 816 F.3d 508, 513 (10th Cir. 1987). The ALJ is required to discuss significantly probative evidence he rejects, Clifton v. Chater, 79 F.3d at 1010, citing Vincent v. Heckler, 739 F.2d 1393, 1394-1395 (9th Cir. 1984); see Teter v. Heckler, 775 F.2d 1104, 1106 (10th Cir.1985) (error to reject some medical reports as based on inadequate findings when they are comparable to those reports the ALJ found sufficiently detailed). He failed to do so in this case.

**Credibility**

22. The court ordinarily defers to ALJ as trier of fact on credibility. Thompson v. Sullivan, 987 F.2d 1482, 1489 (10th Cir. 1993) (citations omitted). However, deference is not an absolute rule. See Frey v. Bowen, 816 F.2d 508, 517 (10th Cir. 1987) (reversing ALJ on credibility). The ALJ's "'[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" Huston v. Bowen, 838 F.2d 1125, 1131, 1133 (footnote omitted) (10th Cir. 1988).

23. In evaluating Plaintiff's non-exertional impairment of pain, the ALJ made no attempt to discount Plaintiff's credibility, stating only that Plaintiff's testimony was credible to the extent it was supported by the medical evidence. (Tr. 20). This is meaningless, and clearly does not meet the requirements for a valid determination of credibility. Huston v. Bowen, 838 F.2d 1125, 1131, 1133 (footnote omitted) (10th Cir. 1988); Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (the ALJ must "articulate specific reasons for questioning the claimant's credibility" where subjective pain testimony is critical.).

## V. Recommended Disposition

24. I recommend that Plaintiff's Motion to Reverse be granted in part, and that this matter be remanded to the Commissioner for additional proceedings, to include:

- A. Reassessment of Plaintiff's residual functional capacity;
- B. Reassessment of Plaintiff's credibility, utilizing correct legal standards; and,
- C. Obtaining vocational testimony or evidence addressing the occupational base remaining after due consideration is given to Plaintiff's exertional and non-exertional limitations.

**RICHARD L. PUGLISI**
**UNITED STATES MAGISTRATE JUDGE**